**RICOH COMPANY, LTD., Ricoh Corporation and Ricoh Electronics, Inc., Plaintiffs,**

v.

**KATUN CORPORATION, PNA Holdings LLC, General Plastics Industrial Co., Ltd., and Nashua Corporation, Defendants.**

Civ. No. 03–2612(WHW).

United States District Court, D. New Jersey.

May 3, 2007.

---

164. *Id.*

165. *Id.* at 17.

166. D.I. 325 at 17.

Lanny S. Kurzweil, Irene M. Hurtado, McCarter & English, LLP, Richard D. Kelly, Jordan S. Weinstein, William T. Enos, James J. Kulbaski, Michael E. McCabe, Jr., Robert C. Mattson, Kenneth D. Wilcox, Elizabeth R. Duckett, Oblon, Spivak, McClelland, Maier & Neustadt, PC, for Plaintiffs.

William H. Trousdale, Brian M. English, Tompkins, McGuire, Wachenfeld & Barry, LLP, David K. Callahan, Bryce C. Pilz, Thomas G. Pasternak, Christopher W. Keegan, Erick S. Ottoson, Kirkland & Ellis, LLP, for Defendants Katun Corporation and PNA Holdings.

Mary S. Henifin, Buchanan Ingersoll, PC, James Quarles, Lisa J. Pirozzolo, Christopher R. Noyes, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, for Defendant Nashua Corporation.

Kevin H. Marino, John D. Tortorella, Marino & Associates, PC, Joseph R. Manning, Bryan G. Harrison, John P. Fry, Morris, Manning & Martin, LLP, for Defendant General Plastics Industrial Corporation.

## OPINION

WALLS, Senior District Judge.

Defendants General Plastics Industrial Co., Ltd. ("GPI"), Katun Corporation ("Katun") PNA Holdings, LLC, and Nashua Corporation ("Nashua") (together, "Defendants") move for summary judgment on the invalidity of U.S. Patent No. 6,075,963 ("the '963 patent") based on the definiteness requirement of 35 U.S.C. § 112. In connection with that motion, plaintiffs Ricoh Company, Ltd., Ricoh Corporation, and Ricoh Electronics, Inc. (together, "Ricoh") move for leave to file a sur-reply. Defendants also move for partial summary judgment of anticipation of the '963 patent and Ricoh cross-moves for partial summary judgment of no anticipation of the '963 patent. Ricoh moves for a permanent injunction in connection with the '963 patent. Pursuant to Fed.R.Civ.P. 78, the motions are decided without oral argument. All remaining motions by the parties, including motions on enforceability and antitrust with respect to the '963 patent, will be addressed separately.

## FACTS AND PROCEDURAL BACKGROUND

Ricoh is a family of companies that manufactures photocopying machines and related replacement products, including photocopier toner. Defendants sell replacement parts for use in copy machines. Katun works with GPI and Nashua to develop and manufacture replacement toner bottles. GPI manufactures and sells to Nashua two of the toner bottles and lids at issue in this case. Nashua purchases toner bottles and lids from GPI and itself oversees the manufacture of certain other toner bottles and lids at issue. Nashua then labels and fills the bottles with toner, which it sells to Katun.

In its Amended Complaint, Ricoh alleges that Defendants are liable, among other things, for infringement of six Ricoh patents based upon their manufacture and sale of toner bottles for use in Ricoh photocopiers. The patents-in-suit are U.S.

Patent Nos. 5,455,662 ("the '662 patent"), 5,627,631 ("the '631 patent"), 6,289,195 ("the '195 patent"), 6,418,293 ("the '293 patent"), 5,828,935 ("the '935 patent"), and the '963 patent (together, the "patents-in-suit" or the "Ricoh patents"). The patents-in-suit all relate to toner bottles but derive from two distinct specifications. The first five patents-in-suit, the '662, '631, '963, '195, and '293 patents derive from the same patent application filed on December 28, 1993, and are part of the same patent family ("the '662 patent family"). The sixth patent-in-suit, the '935 patent, derives from a different patent application filed on October 11, 1996 and is based on a different "priority document" from the documents used for the '662 patent family.

This case involves copier parts that are used to dispense replacement toner into a copier. Before the generation of replacement toner bottles at issue here was invented, toner bottles were generally installed in a vertical position. After the bottle was installed, the copier would rotate the bottle to a horizontal position. These toner bottles were restricted in size due to the amount of space required to rotate the bottle. However, a horizontally mounted bottle presented toner delivery problems—the toner would spill out as the bottle was being mounted, and as the toner was used, gravity would not propel the toner towards the bottle's mouth.

The new generation toner bottles are inserted in a horizontal position. It is no longer necessary for these bottles to move from a vertical position to a horizontal position, so they are larger. Ricoh claims that it solved the delivery problems by inventing a new lid that is removed by the copier after the bottle is installed and a "scoop" system that delivers the toner to the mouth of the bottle as needed. In addition, the "screw" shape of the toner

bottles allows the toner bottle to be rotated inside the machine without any additional space. In this litigation, defendants claim that Ricoh's bottle designs are not new and were anticipated by earlier patents. Defendants point to a number of patents obtained before the patents-in-suit and claim that Ricoh obtained its patents by modifying the language in these existing patents.

On August 2, 2005, this Court issued an opinion construing the disputed claims of the patents-in-suit. It also considered defendants' arguments that the '963 patent was anticipated by either of two references: the Matsushita Patent or the Ayotte Patent. This Court found that the '963 patent was not anticipated by these references and, accordingly, granted Ricoh's motion for partial summary judgment of no invalidity. Having found that the accused product literally infringed the '963 patent, this Court also granted Ricoh's motion for partial summary judgment of infringement.

Defendants now challenge the '963 patent on two additional grounds. First, they argue that in light of this Court's claim construction and the Federal Circuit's recent holding in *IPXL Holdings, L.L.C. v. Amazon.com Inc.*, 430 F.3d 1377 (Fed.Cir. 2005), the '963 patent is invalid as indefinite under 35 U.S.C. § 112. Second, they argue that the '963 patent, as construed by this Court, is anticipated by different prior art—the "Pritchitt Patent." [1]

This opinion decides those motions as well as two related motions: Ricoh's cross-motion for partial summary judgment of no anticipation of the '963 patent and Ricoh's motion to file a sur-reply in connection with defendants' motion on indefiniteness.

---

1. U.S. Patent No. 4,372,467.

## SUMMARY JUDGMENT

### I. Legal Standard

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only the existence of a genuine and material factual dispute between the parties will defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could find for the nonmovant on that issue; it is material if, under the substantive law, that issue would affect the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]" that show that there is no genuine material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir.2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir.2002).

■ It is well-settled that the issues in a patent case are subject to summary judgment. *See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir.1988).

### II. Discussion

#### A. *Validity of the '963 Patent—Indefiniteness*

■ Under 35 U.S.C. § 282, a patent is presumed valid. Ricoh does not bear the initial burden to submit evidence supporting the validity of its patent. *Avia Group*, 853 F.2d at 1562. Rather, defendants must "establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity." *Id.*

#### 1. Law of Indefiniteness

■ The Patent Act requires that each claim in a patent "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (2006). A claim violates this definiteness requirement if it does not "reasonably apprise those skilled in the art of its scope." *IPXL*, 430 F.3d 1377, 1383–84 (Fed.Cir.2005). Indefiniteness is a question of law. *Id.* at 1380. In *IPXL*, the Federal Circuit was asked to decide whether a "single claim covering both an apparatus and a method of use of that apparatus is invalid." *Id.* at 1384. While that court identified this issue as a matter of first impression for the Federal Circuit, it pointed out that the "Board of Patent Appeals and Interferences [ ] has

made it clear that reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112." *Id.* The Federal Circuit adopted the Board's reasoning: were a claim to include "two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." *Id.*

The claim at issue in *IPXL* read:

*The system* of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type and the *user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* (emphasis added by Federal Circuit). The Federal Circuit found that this claim covered both an apparatus—"the system"—and a method—when the "user uses the input means"—and accordingly was invalid.

Recently, parties in several cases have asked district courts to find claims invalid under *IPXL*. In almost all cases, district courts have held that the suspect claims did not cover both an apparatus and a method, but rather were apparatus claims containing functional limitations. *See, e.g., Yodlee, Inc. v. CashEdge, Inc.,* No. 05–01550, 2006 WL 3456610, at *3–5 (N.D.Cal. Nov. 29, 2006); *Toshiba Corp. v. Juniper Networks, Inc.,* No. 03–1035, 2006 WL 1788479, at *2–5 (D.Del. June 28, 2006); *Collegenet, Inc. v. XAP Corp.,* 442 F.Supp.2d 1036, 1062–63 (D.Or.2006); *Collaboration Props., Inc. v. Tandberg ASA,* No. 05–01940, 2006 WL 1752140, at *6–7

(N.D.Cal. June 23, 2006); *Sienna, LLC v. CVS Corp.,* No. 06–3364, 2007 WL 13102, at *7–8 (S.D.N.Y. Jan. 3, 2007). These courts found that claims containing both a physical description of an apparatus and a description of the apparatus' function, e.g., "communicates," "populates," "configured to," and "upon activation," were not impermissible apparatus-method claims. Instead, these "claims simply use active language to describe the *capability* of the apparatuses; they do not claim the activity itself." *Yodlee, Inc.,* 2006 WL 3456610, at *4. *See also Collaboration Props.,* 2006 WL 1752140, at *6–7.

█ It is well-settled that a functional limitation—an attempt to define something by what it does rather than by what it is— is a permissible means of articulating a claim limitation. *See, e.g., In re Schreiber,* 128 F.3d 1473, 1478 (Fed.Cir.1997). The district court in *Yodlee* provided the following example of a permissible functional limitation that could be safely included in a claim alongside a description of the apparatus:

A simple analogy would be a claim which physically describes a pair of scissors designed to cut paper, then states, "upon opening and closing the sharp edges of the scissors on a piece of paper, the paper is cut." The language describes the capability of scissors; it is function language. Infringement occurs upon the manufacturing and sale of scissors that are capable of cutting paper.

2006 WL 3456610, at *5.

**2. Analysis**

The claim language in *IPXL* clearly covered both the system and the user's active "use" of the system. In the case at hand, this Court held that Ricoh's claim was limited by language in the preamble that reads: "to selectively plug or unplug a discharge mouth of a developer container

mounted to an image forming apparatus." 380 F.Supp.2d at 435–36.[2] Unlike the claim in *IPXL*, this language does not describe active use. Rather, like the district court cases above, it describes the claimed apparatus in functional terms. As this Court held in its August 2 opinion:

> [W]hat is claimed is solely a lid, specifically designed to function with the developer containers to be used in the environment of the image forming apparatus ... The Court finds that the preamble of claim 1, "[a] lid to selectively plug or unplug a discharge mouth of a developer container mounted to an image forming apparatus for replenishing a developer"

is a functional description of the lid whose structure is further described in the body of the claim.

*Id.* at 435.

■ This Court's claim construction was clear: the preamble gives life and meaning to the lid by describing the function of the lid and the environment in which it is designed to operate. The claim does not recite a method of use. *See Yodlee*, 2006 WL 3456610, at *4 ("The claims simply use active language to describe the *capability* of the apparatuses; they do not claim the activity itself"). Accordingly, the Court finds that the '963 patent does not contain an impermissible method-apparatus claim.[3]

2. For context, claim 1 of the '963 patent (the only independent claim) reads:
 1. A lid to selectively plug or unplug a discharge mouth of a developer container mounted to an image forming apparatus for replenishing a developer, said lid comprising:
 a body, and
 a lug protruding from one side of said body,
 said lug facing outward from said developer container when said
 lid plugs said discharge mouth.

3. In making this argument on invalidity, defendants try to re-argue claim construction. Their argument assumes that a preamble may do only one of three things: describe a method, explicitly state a structural limitation, or state the purpose and intended use of the invention. Defendants argue that the preamble here does not provide a structural limitation and assert that a statement of purpose or intended use contained in a preamble cannot be limiting. Defendants conclude that because the Court found this preamble limiting, the only remaining option is that the preamble describes a method. Because this argument warrants some discussion and because the bulk of the argument appears in defendants' reply brief, the Court grants Ricoh's request to file their sur-reply. The Court has already had the opportunity to review the sur-reply, which was attached as Ex. A to the Certification of Elizabeth R. Duckett, Esq.

The Court disagrees with the premise of defendants' argument. First, as this Court noted in its August 2 opinion, the Federal Circuit has held that a statement of purpose appearing in a preamble may be limiting. 380 F.Supp.2d at 434–35; *In re Stencel*, 828 F.2d 751, 755 (Fed.Cir.1987). Second, to the extent defendants implicitly argue that a preamble may not contain a functional limitation, the Court notes that the Federal Circuit has clearly held that limitations may be functional and has never stated that a limitation articulated in functional terms may not appear in a preamble. In an effort to distinguish preamble language that is limiting from non-limiting, mere introductory language, the Federal Circuit has sometimes emphasized the structural limitations imposed by functional language appearing in a preamble. *See, e.g., Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1256–57 (Fed.Cir.1989) (preamble limits claim to fibers that "work as" waveguides, and requires structural relationship that will allow invention to "function as an optical waveguide."); *see also In re Paulsen*, 30 F.3d 1475, 1479–80 (Fed.Cir.1994) (where use of term "computer" in preamble limited claim to device that is "capable of carrying out calculations," preamble imposed "structural limitation" as opposed to "mere introductory language"). Indeed, limitations couched in functional terms will often impose structural requirements, as is the case here, where this Court held that the preamble language limits the claim to a lid "*specifically designed* to function with the developer containers to be used in the environment of the image forming ap-

■ The Court notes Ricoh's argument that defendants waived this defense by failing to raise it in when they opposed Ricoh's earlier cross-motion for partial summary judgment of no invalidity. (Defs.' Reply and Opp'n, filed February 23, 2004.) The Court agrees with defendants that they were not required to raise this indefiniteness defense at that time. As discussed later, the motion Ricoh references was a cross-motion for summary judgment on invalidity, limited to the subject matter of the original summary judgment motion, that is whether the Matsushita or Ayotte references anticipate the '963 patent. Defendants could not be expected to raise an entirely separate indefiniteness-invalidity argument in opposing Ricoh's cross-motion. *See Enzo Life Sciences, Inc. v. Digene Corp.,* 305 F.Supp.2d 400, 405 (D.Del.2004).[4]

## B. *Validity of the '963 Patent—Anticipation by Pritchitt*

### 1. Waiver of Claims

Following this Court's claim construction opinion, defendants identified the Pritchitt patent as an allegedly anticipating reference and have now moved for summary judgment on anticipation based on Pritchitt. Ricoh devotes a substantial portion of its opposition to defendants' motion charging that any argument with respect to this reference is waived because defendants produced it ten months after the close of fact discovery and because, according to Ricoh, this Court's finding of "no invalidity" is now the law of the case. With regard to the first point, defendants counter that they produced Pritchitt in supplementing their discovery responses following this Court's 2005 opinion on claim construction and that such supplementation was reasonable in light of the Court's opinion. They also argue that Ricoh was not prejudiced by any delay in identifying Pritchitt because defendants included the reference in their interrogatory responses before the due date for the invalidity experts' reports, enabling Ricoh's expert to incorporate and respond to Pritchitt.

■ The Court is aware of the possibility that by withholding potentially anticipatory references until after the Court has ruled on claim construction and summary judgment motions, a defendant may substantially prejudice a patent-holder. Here, however, the Court finds that Ricoh has not been harmed by the timing of defendants' disclosure. In determining whether a failure to disclose was harmless, this Court looks to: (1) whether the opposing party was prejudiced, (2) whether such prejudice may be cured, (3) the likelihood such failure will disrupt trial, (4) bad faith

---

paratus." 380 F.Supp.2d at 435 (emphasis added). This Court has already found that the preamble here is necessary to give life, meaning, and vitality to the claim. That remains true whether such language is labeled a statement of purpose, a functional limitation, or a structural limitation. Finally, the Court notes that defendants' indefiniteness argument fails regardless of which of these characterizations best describes the preamble because the preamble clearly does not describe a method.

4. Ricoh also argues in a footnote that this defense should be stricken because defendants failed to identify it in their responses to interrogatories and failed to provide plaintiffs with any discovery on this defense. In response, defendants point to general assertions in their answers stating that the patent was invalid under 35 U.S.C. § 112. The Court is wary of sanctioning dilatory conduct. However, Ricoh's footnote does not articulate how Ricoh was harmed by any delay and the Court does not wish to wade into any quagmire concerning whether defendants' statements with respect to 35 U.S.C. § 112 were sufficient to disclose this defense or if *IPXL* created any new law that would excuse defendants from disclosure of such a defense.

or willfulness, and (5) the importance of the evidence. *See In re Mercedes–Benz Anti–Trust Litig.*, 225 F.R.D. 498, 506 (D.N.J.2005), citing *Newman v. GHS Osteopathic Inc. Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir.1995).

■ Because Ricoh's expert was able to incorporate Pritchitt into his report and Ricoh had the opportunity to depose defendants' expert on Pritchitt, the Court finds that Ricoh was not prejudiced. Given the stage in proceedings and that other motions remain outstanding, any delay in producing such evidence will not disrupt preparation for trial. As to bad faith or willfulness, defendants explain, plausibly, that they located Pritchitt when searching for prior art in response to the Court's claim construction. Finally, prior art potentially invalidating a patent is potentially critical to defendants' case. On balance, the Court finds that to the extent any delay in disclosing Pritchitt was improper, it was also harmless, and the Court will not deem such defense waived.

■ Nor is the Court persuaded that defendants' motion is somehow barred by the Court's earlier "no invalidity" opinion. As discussed in detail below, that opinion did not resolve all potential challenges to the validity of the '963 patent; it was not a finding of global *validity*. The Court held only that the '963 patent was not anticipated by either the Ayotte or the Matsushita references. As discussed later, the Court's opinion did not address defendants' obviousness argument. The 2005 opinion did not establish any "law of the case" preventing this Court from finding the '963 patent invalid based on a future motion.

## 2. Law on Anticipation

■ Under 35 U.S.C. § 282, a patent is presumed valid. Defendants bear the burden of "establish[ing] facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity." *Avia Group*, 853 F.2d at 1562. A patent is invalid as anticipated if "the invention ... was patented or described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). A patent issued by the PTO or a foreign patent authority is a printed publication under § 102(b) if it was issued at least one year before the challenged patent was sought. To anticipate an existing patent, a single prior publication must contain all the essential limitations of each claim. Defendants must show that "each element of the claim in issue is found in a prior patent or publication, either expressly or under principles of inherency." *Tyler Refrigeration v. Kysor Indus. Corp.*, 777 F.2d 687, 689 (Fed.Cir.1985). "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1347 (Fed.Cir.1999). The prior art, "must disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter." *PPG Indus. Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed.Cir.1996). However, it need not present the invention in a positive light, so long as all claims are explicitly or inherently contained in the publication. *See Celeritas Technologies Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed.Cir.1998).

■ An anticipation analysis requires a two-step process. The first step is claim construction. The second step requires the Court to compare the properly construed claims with the subject matter described in the prior art references and identify the elements disclosed in the allegedly anticipating reference. *See e.g.,*

*Helifix Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed.Cir.2000). Claim anticipation in prior art is a finding of fact. *See Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 780 (Fed.Cir.1985). Defendants' motion, then, can only be granted if there are no genuine disputes of material fact as to whether the processes described in any one of the articles submitted anticipate the patents' claims.

### 3. Law on Claim Construction

This Court has already ruled on claim construction. Nonetheless, the parties point to two terms they view as relevant to the question of whether Pritchitt is anticipatory and that were not previously construed by this court: "lid" and "lug."[5] As to "lid," defendants propose "something that covers the opening of a hollow container (as a vessel or box): a movable cover." Ricoh adopts this definition, but places a qualification on its meaning, arguing that this dictionary definition is acceptable only if "the dictionary definition itself is understood to be consistent with the teachings of the '963 patent." (Pls.' Opp'n at 7.) The parties argue for different definitions of "lug," with defendants proposing "a projection with which the copier interacts," and Ricoh proposing "a projection or a handle by which something may be grasped."

 In order to resolve the question of anticipation, the Court must first construe the terms "lid" and "lug." Claim construction is a matter of law reserved exclusively for the courts. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The claims of the patent-in-suit must be construed before an infringement or invalidity analysis can be performed. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir. 1998); *Helifix, Ltd.*, 208 F.3d at 1346. Only those claims at issue and in dispute need to be construed. *See United States Surgical Corp. v. Ethicon, Inc.* 103 F.3d 1554, 1568 (Fed.Cir.1997).

 When interpreting an asserted patent claim, courts should look first to the intrinsic evidence of record, which includes the patent's claims, the patent's specification, and the complete prosecution history. *Markman*, 52 F.3d at 979. Intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir.1996).

 The first principle of claim construction is that "the language of the claim defines the scope of the protected invention." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed.Cir.1995). Accordingly, "resort must be had in the first instance to the words of the claim," words to which courts generally ascribe their ordinary meaning. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed.Cir.1984). A term's ordinary meaning is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir.2005). Claim terms are assigned their ordinary

---

**5.** For context once again, claim 1 of the '963 patent (the only independent claim) reads:

 1. A lid to selectively plug or unplug a discharge mouth of a developer container mounted to an image forming apparatus for replenishing a developer, said lid comprising:

a body, and
a lug protruding from one side of said body,
said lug facing outward from said developer container when said lid plugs said discharge mouth.

meaning unless it appears from the patent specification or file history that the words were used differently by the inventor. *See id.* at 1313, 1316–17.

■ In *Phillips,* the Federal Circuit observed that often "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. Both "the context in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question" are useful for understanding the meaning of claim terms. *Id.* Similarities and differences among various claims are useful for understanding the meaning of particular claim terms. *Id.* As example, the "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation is not present in the independent claim." *Id.* at 1314–15.

■ However, patent claims "must be read in view of the specification, of which they are a part." *Markman,* 52 F.3d at 979–80. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips,* 415 F.3d at 1315 (quoting *Vitronics,* 90 F.3d at 1582). Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed.Cir.1998). It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips,* 415 F.3d at 1317.

■ However, in *Comark Commc'ns Inc. v. Harris Corp.,* the Federal Circuit observed that "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." 156 F.3d 1182, 1186–87 (Fed.Cir. 1998). If the specification expressly or implicitly defines terms used in the claims differently than their ordinary meaning, then the definition derived from the specification will govern how the claim terms are to be interpreted. *Markman,* 52 F.3d at 979–80; *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.* 242 F.3d 1337, 1344 (Fed.Cir.2001). If the embodiments in the specifications are intended to be exemplary, and not "strictly coextensive" with the claims, then they should not be read to limit the claims. *Phillips,* 415 F.3d at 1323 (Fed.Cir.2005). *See Rhine v. Casio, Inc.,* 183 F.3d 1342, 1346 (Fed.Cir. 1999); *Electro Med. Sys. S.A. v. Cooper Life Sciences,* 34 F.3d 1048, 1054 (Fed.Cir. 1994).

■ Courts may also rely on extrinsic evidence: "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman,* 52 F.3d at 980. However, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed.Cir.2004) (quotation omitted).

■ As to dictionaries in particular, the Federal Circuit observed that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used by both our court and the Supreme Court in claim interpretation." *Phillips,* 415 F.3d at 1322. Courts should not, however, rely on dictionary definitions where such definitions conflict with meanings ascertained from the intrinsic evidence. *See id.* at 1322. The Federal Circuit has warned that "a general-usage dictionary cannot overcome credible art-

specific evidence of the meaning ... of a claim term." *Id.* (quoting *Vanderlande Indus. Nederland B.V. v. I.T.C.,* 366 F.3d 1311, 1321 (Fed.Cir.2004)).

### 4. Analysis

#### a. Claim Construction

##### *"Lid"*

As to the term "lid," the Court adopts the definition purportedly agreed upon by the parties, with some clarification. To a degree, the parties agree that the definition of a "lid" is "something that covers the opening of a hollow container (as a vessel or box); a movable cover." (Defs.' Br. at 14; Pls.' Opp'n at 7.) However, while defendants assert that this definition is self-explanatory, Ricoh argues that the definition is only correct "so long as [it] is understood to be consistent with the teachings of the '963 patent." (Pls.' Opp'n at 7.) Lurking behind this apparent consensus are two very different views of what it means for the lid to be a "movable cover."

Claim construction is distinct from, and a prerequisite to, an anticipation analysis. Nonetheless, the parties' arguments with respect to the Pritchitt patent reveal fundamental differences in their interpretations of "movable cover." Defendants believe that something is a "movable cover" so long as it is capable of being moved at some point, possibly in relation to a toner cartridge bottle. As example, the valve disclosed in Pritchitt is movable because it is screwed onto the toner bottle before the bottle is mounted into a photocopier. (Defs.' Reply at 13.) Defendants do not believe that the lid as a whole needs to be "movable" while mounted to the copying apparatus. *See id.*

In contrast, plaintiff interprets "movable cover" to mean that the lid as a whole is movable when mounted to the image-form-

ing apparatus. (Pls.' Opp'n at 9.) More specifically, plaintiff appears to require that the "movable cover" move, while mounted, so as to selectively open and close a toner bottle. *See id.* at 9–10.

In light of this disagreement, the Court finds that the definition provided by defendant must be amended to further define "movable cover." Both the intrinsic evidence and common sense support a definition of "lid" requiring that the lid, as a whole, be movable when the lid is mounted onto the image-forming apparatus, in a position to selectively plug and unplug the discharge mouth of a developer container.

The Court finds that one of ordinary skill in the art would understand "lid" to have this meaning for two reasons. First, the intrinsic evidence repeatedly and invariably describes the invention as a lid capable of being removed and replaced after it is placed within a photocopier. *See Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed.Cir.1998) ("[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). Second, if the term "lid," were given the broad definition suggested by defendants, any object that is at some time placed over an opening in a hollow container would constitute a "lid." This definition would include objects that are attached so as to permanently close an opening. That meaning is both inconsistent with ordinary usage of the term "lid" and is also illogical in the context of a patent that concerns the flow of toner out of a toner bottle.

The patent consistently describes a lid that may be removed from and replaced onto the mouth of the toner bottle once the bottle is mounted in the image-forming apparatus. (*See e.g.,* '963 Patent, figs. 4A, 4B, 4C, 6, 9A, 9B, 10B, 11B, 13A, 17B,

18B, 27, 28, 30; '963 Patent, col. 7, ll. 12–47; col. 8, ll. 31–33; col. 11, ll. 56 to col. 12, ll. 17; col. 12, ll. 39–52; col. 24, ll. 28–42.) In the "summary" section of the written description, the patent outlines the "present invention['s] .... unprecedented advantages," which include:

(1) Holding means for holding a developer container is rotatable in a substantially horizontal plane for the replacement of a developer container [sic]....

(2) A lid is automatically attached to and detached from a mouth portion included in the developer container. Therefore, only if a person mounts the developer container to the holding means, a developer can be replenished. [sic] This not only facilitates the replacement of the developer container, but also prevents the developer from falling from the mouth portion of the developer container. In addition, the developer deposited on, for example, the inner surface of the mouth portion is prevented from falling to the outside.

(3) While the holding means is held in a position for mounting the developer container, the container can be removed from the mouth portion thereof sealed by a lid. This also prevents the developer deposited on the inner surface of the mouth portion from falling to the outside.

(col. 24, ll. 17–42.)

Every written and visual depiction of the invention describes a lid that is constructed to be moved once it has been placed inside the copier. Moreover, as the "summary" reflects, this invention improves on the existing art by providing for a lid that can be removed and replaced after the toner bottle is placed horizontally in the copier. This improvement avoids toner leakage when the developer container is mounted horizontally. This evidence describes more than a preferred embodiment of the invention. *See Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1301–02 (Fed.Cir.1999); *SciMed,* 242 F.3d at 1343. Rather, the ability of the lid to be removed and replaced once mounted is essential to the invention described by the patent.

Moreover, even in the absence of evidence from the specification, this definition is dictated by common sense, particularly given the general subject matter of the patent. If by "movable cover" all that is conveyed is a cover that is movable at some point in space and time, the definition would apply to objects that do not satisfy any basic notion of a lid. As example, a solid metal top that is soldered onto an open metal box during assembly of the box may be movable when first placed on the box, but it is no longer movable once soldered. It would be misleading, if not downright inaccurate, to call the thing that is now soldered to the box a "lid" because it was, at some point moved onto the top of the box. Otherwise, at some point during assembly or installation, any cover would be "movable."

In other words, to say that the cover need be "movable" without any further clarification is to render meaningless the adjective "movable," because virtually any cover is moved at some point. The resulting definition is too broad to be meaningful. *See Nikken USA v. Robinsons–May, Inc.,* 51 Fed.Appx. 874, 883–84 (Fed.Cir. 2002) (rejecting construction that merely required that an object be "attachable," because anything could be "attachable"). It follows that to be a "lid," a cover must be movable during a specific period of time or when performing a certain activity. Upon reading the '963 patent, one of ordinary skill in the art would understand that the context of the invention described by the patent is the selective delivery of photocopier toner from a toner bottle. He or

she would, against this background, understand that a "lid" is an object which is movable so as to selectively open and close the toner cartridge. As clearly set forth in the patent, that activity is only performed once the lid (along with the bottle) is mounted into the copier.

### *"Lug"*

■ For similar reasons, the Court accepts Ricoh's definition of the term lug as "a projection or handle by which something may be grasped."[6] As discussed above, the patent repeatedly and invariably describes a lid that is removed and replaced so as to plug and unplug the discharge mouth of a developer container. It also repeatedly and invariably describes a lid containing a lug that is grasped so as to remove and replace the lid. (*See, e.g.,* figs. 4a, 4b, 4c, 9a, 9b, 13a; col. 7, ll. 12–47; col. 11, ll. 12–16, 60–63; col. 12, ll. 2–10; col. 12, ll. 2–10; col. 13, ll. 13–45; col. 19, ll. 23–42.) Defendants' proposed construction—"a projection with which the copier interacts"—adds ambiguity to the term "lug" that does not exist in the patent. The patent not only conveys that the copier "interacts with the projection on the lid," but consistently specifies *how* the copier interacts with the lug of the lid: the copier grasps the lug.

■ The Court is not persuaded by defendants' argument that the term "lug" must have a broader meaning because it is used elsewhere in the specifications to describe a projection on the bottle that is never grasped. (Defs.' Br. at 25.) The claims cover only a "lid." As used in those claims, the term "lug" refers only to the projection on the lid. The specifications

uniformly describe that projection as being grasped. The other use of the term "lug"—to describe a projection on the toner bottle—appears only in the specifications, with reference to a structure that is not part of the claimed subject matter and is never discussed in the claims. Even where the same term appears more than once in the *claims,* the written description may support different definitions for the term. *See, e.g., Pitney Bowes, Inc. v. Hewlett–Packard, Co.,* 182 F.3d 1298, 1310 (Fed.Cir.1999). Here, the use of the term "lug" is entirely consistent within the claims; the other use of "lug" appears in the specification with reference to a portion of the toner bottle not claimed by the '963 patent. The Court finds that the proper construction of the claim term "lug" is "a projection or handle by which something may be grasped."

### b. Anticipation

■ The question on anticipation is whether the valve disclosed by Pritchitt discloses all of the elements of the lid described in the '963 patent. The "birdfeeder" valve disclosed in Pritchitt (right, below) operates to allow the flow of developer when the spindle (88) is pressed upwards to lift the valve plug (84) off the seat (70). When the spindle is released, the plug returns to the seat, plugging the valve. The Pritchitt patent also discloses a "flipper" mechanism which acts to raise and lower the spindle (88), opening and closing the valve.

One embodiment of the '963 patent is displayed below (left, below).[7] In this em-

---

**6.** The Court's August 2, 2005 opinion construed "phrases related to a 'lug' protrusion of a developer container." 380 F.Supp.2d at 430. Those phrases and the Court's analysis of them concerned the location on the lid from which the lug must protrude. *Id.* at

430–31. The Court did not directly address the definition of the term "lug," which the parties now dispute.

**7.** The Court notes that this particular embodiment is not necessarily co-extensive with the

bodiment, the lid (25) selectively plugs and unplugs a discharge mouth when the lid is separated by the cap (29), by means of a mechanism that grasps the lug (26).

'963 Patent, fig. 5A

(Shading added by Ricoh)

Pritchitt, fig. 2

(Shading added by Ricoh)

Pritchitt anticipates the '963 patent only if it discloses each of these elements. *Tyler Refrigeration v. Kysor Indus. Corp.*, 777 F.2d 687, 689 (Fed.Cir.1985). Ricoh points out that the only parts of the valve that are movable once the valve is mounted into the machine are the valve plug (84), the spindle (88), and the spring (100). As construed above, a lid is a cover designed to be movable—as a whole—once installed into the photocopier. At best, then, these three parts (and only these three parts) could potentially constitute a "lid."

As construed by this Court on August 2, 2005, the patent also requires that the lid be able to selectively plug or unplug a discharge mouth of a developer container mounted to an image forming apparatus. 380 F.Supp.2d at 435–36. Pritchitt does not disclose a lid capable of satisfying this limitation because the movable parts of the valve—the valve plug (84), spindle (88), and spring (100)—cannot, by themselves, selectively plug or unplug a discharge mouth of a developer container. Alone, they merely open and close an opening in the valve (the valve seat (70)). Put differently, Pritchitt discloses an apparatus that must be secured onto the opening of a toner bottle and which itself contains an opening that may be plugged and unplugged by movable parts. Those movable parts cannot plug or unplug the discharge mouth of the developer without interacting with the fixed, non-movable parts of the valve. Whereas the lid of the '963 patent is designed to be moved on and off the discharge mouth of a developer container so as to open and close it, the Pritchitt valve is attached to the developer container and allows the passage of toner by means of certain internal moving parts.

The Court holds that no fact-finder could reasonably find that the Pritchitt patent discloses a lid. Having determined that Pritchitt is missing at least one element of the '963 patent, the Court need

scope of the '963 patent, but for purposes of understanding the differences between the claims of the '963 patent and the Pritchitt patent, this diagram is illustrative.

not consider whether Pritchitt discloses a "lug." *See Tyler Refrigeration v. Kysor Indus. Corp.,* 777 F.2d 687, 689 (Fed.Cir. 1985). Defendants' motion for summary judgment on anticipation is denied and Ricoh's cross-motion for summary judgment of no invalidity (no anticipation) is granted.

### PERMANENT INJUNCTION

Ricoh also requests that defendants be permanently enjoined from further infringement of the '963 patent. Both parties agree that "the general rule is that a permanent injunction will issue once infringement and invalidity have been adjudged." (Pls.' Reply at 5.) They disagree on whether the Court has considered defendants' argument that the '963 patent is invalid as obvious. Ricoh argues that its cross-motion to defendants' motion for summary judgment on the Matsushita and Ayotte patents also raised the issue of obviousness and that this Court's August 2, 2005 opinion implicitly found that the '963 patent was not obvious.

Defendants' motion for summary judgment on the Matsushita and Ayotte Patent was limited to the issue of anticipation. Defendants did not move for summary judgment on obviousness. Ricoh, in its thirty-page opposition and cross-motion, devoted one and a half pages to arguing that defendants have provided no evidence suggesting that the patent is obvious in light of the Matsushita and Ayotte Patents. (Pls.' Opp'n at 28–29.)

Under local rule 7.1(h), a cross-motion must relate to the subject matter of the original motion. Anticipation and obviousness, while related, are "legally distinct and separate challenges to a patent's validity" requiring different elements of proof. *Duro–Last, Inc. v. Custom Seal, Inc.,* 321 F.3d 1098, 1107–08 (Fed.Cir.

2003). Obviousness is not an appropriate subject for a cross-motion on anticipation.

This Court's August 2, 2005 opinion held that the '963 patent was not anticipated by either the Matsushita or Ayotte Patents. The opinion did not address the issue of whether the '963 patent was invalid as obvious. In granting Ricoh's motion for partial summary judgment of "no invalidity" this Court did not make a global finding that the '963 patent was valid as against all defendants' arguments for invalidity. Plaintiffs' motion for a permanent injunction is premature in light of the outstanding question of obviousness. The motion is denied.

### CONCLUSION

It is on this 3rd day of May, 2007,

ORDERED that defendants' motion for summary judgment on invalidity under 35 U.S.C. § 112 is Denied. Ricoh's request for leave to file a sur-reply in connection with that motion is Granted. Defendants' motion for summary judgment on anticipation is Denied and Ricoh's cross-motion for judgment of no anticipation is Granted. Finally, Ricoh's motion for a permanent injunction is Denied.